IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

IN RE:                                    )
                                          )    Chapter 13
DAVID T. CORBETT,                         )
                                          )    Bankruptcy No. 15-01582
        Debtor.                           )

**RULING ON TRUSTEE'S OBJECTION TO DEBTOR'S CLAIM OF HOMESTEAD EXEPMPTION**

This matter came before the Court for an evidentiary hearing on Debtor's claim of homestead exemption. Derek Hong appeared for Debtor David Corbett. Carol Dunbar appeared for herself as Chapter 13 Trustee. The Court took the matter under advisement. The parties submitted briefs. This is a core proceeding under § 157(b)(2)(B).

**STATEMENT OF THE CASE**

Debtor owns a house in South Carolina. Debtor's wife and son live in the house year-round. Debtor, however, lives in this house for only brief periods each year because he works in Iowa for the majority of the year. Debtor intends to retire and live in the house. Debtor claimed this house exempt as his homestead. Trustee objects. Trustee argues that the South Carolina house has never been Debtor's homestead because he has never used the house as a home. The Court concludes that the house is exempt as a homestead because Debtor purchased it as a retirement home and has occupied it with his family.

## STATEMENT OF THE FACTS

Debtor purchased a house in South Carolina in 2008. Debtor testified that he purchased the house so his wife could live there, for the tax benefits, and because he wanted to live there after retiring. Debtor's wife and son—both of whom are unable to work—live in the South Carolina house year-round. Debtor's wife receives social security benefit payments.

Debtor immediately occupied the house for two and a half weeks with his wife and son after he purchased it. Since that time, Debtor has lived in the South Carolina house for two and a half weeks every summer—and when he visits. During the majority of the year, however, Debtor lives in a small apartment in Cedar Rapids, Iowa. He works at Quaker Oats in a job that best allows him to support his family.

Debtor considers the South Carolina house to be his home. Debtor intends to move to South Carolina and live in the house permanently after he retires. Debtor plans to retire when his pension and social security payments begin on March 11, 2018.

## CONCLUSIONS OF LAW AND ANALYSIS

The Bankruptcy Code gives debtors the choice between the federal exemptions provided in § 522(d) and state law exemptions, unless the state opts out of the federal exemptions. 11 U.S.C. § 522(b)(3)(A) (2014); Hanrahan v.

2

Roberts (In re Roberts), 450 B.R. 159, 164 (Bankr. N.D. Iowa 2011). Iowa has opted out of the federal exemptions. Iowa Code § 627.10 (2015) ("A debtor to whom the law of this state applies on the date of filing of a petition in bankruptcy is not entitled to elect to exempt from property of the bankruptcy estate the property that is specified in 11 U.S.C. § 522(d)."). Debtor claimed the South Carolina house as exempt under Iowa law. Trustee objected to the exemption. Trustee does not argue that Debtor should be prohibited from using Iowa exemption law, or that other law should apply. In short, Trustee does not dispute the extra-territorial application of Iowa's homestead exemption or that Iowa law controls this dispute.[1] Trustee argues only that Debtor fails to establish the requirements of the Iowa homestead exemption.

In particular, Trustee argues that Debtor never established the South Carolina house as his homestead. Trustee argues that Debtor never lived in the house as a home. Trustee argues that the South Carolina house has effectively been Debtor's vacation house. Debtor argues that the house became his homestead when he purchased it because he occupied it for two and a half weeks with his wife and son, they continue to live there year-round, and he intends to retire there.

---

[1] Extra-territorial application of state law homestead exemptions in bankruptcy is entirely consistently with both Eighth Circuit law and the law in this District. In re Drenttel, 403 F.3d 611 (8th Cir. 2005) (holding that Minnesota homestead exemption could be applied to Arizona homestead); see also In re Roberts, 450 B.R. 159, 165 (N.D. Iowa 2011) (relying on In re Drenttel and finding that the Iowa homestead exemption has extraterritorial effect in bankruptcy).

Trustee has the burden to show the exemption is not proper. In re Roberts, 443 B.R. 531, 537 (Bankr. N.D. Iowa 2010), aff'd, 450 B.R. 159 (N.D. Iowa 2011).

### A. Establishing the Homestead

Trustee's main argument is that Debtor never established the South Carolina house was intended to be, or ever was, his homestead. The Iowa Code requires that "[t]he homestead must embrace **the house used as a home** by the owner." Iowa Code § 561.1 (emphasis added). "This section's language has been in place for at least 150 years." In re Keener, No. BR 14-01169, 2015 WL 998881, at *4 (Bankr. N.D. Iowa Mar. 3, 2015). "The Iowa courts have interpreted this phrase to mean that the house must be used 'as a home —a place to abide—a place for the family; and when thus used and occupied, it becomes the homestead, and not before.'" Id. (quoting Charless & Blow v. Lamberson, 1 Iowa 435, 435–36 (1855)); see also Christy v. Dyer, 14 Iowa 438, 440 (1863) ("[T]he homestead character does not attach to property until it is actually occupied and used by the family as a home . . . . A mere intention to occupy, though subsequently carried out, does not make the premises the homestead until there is actual residence."); Neal v. Coe, 35 Iowa 407, 409 (1872) ("[A]ctual use and occupation of property as a home is necessary in order to impress upon it the character of a homestead."); Blue v. Heilprin, 105 Iowa 608, 75 N.W. 642, 644 (1898) ("[M]ere intention to occupy as a homestead does not give the homestead right . . . there must be

4

occupation as well as such intention."). Although these are extremely old cases, they remain good law. See Keener, 2015 WL 998881, at *4 (citing In re Estate of Timm, No. 12–1212, 837 N.W.2d 679, 2013 WL 3272488, at *5 (Iowa Ct. App. 2013)). This Court recently summarized this law: "Where a debtor is attempting to claim a homestead exemption, the debtor should not only have the intention of making that residence his or her permanent home, the debtor should also engage in overt acts that express that intention." Keener, 2015 WL 998881, at *3.

Trustee has questioned whether Debtor ever actually used and occupied the home so as to "impress upon it the character of a homestead." Neal, 35 Iowa at 409. At least one Iowa Court has recently concluded that living in a house for "several months" after buying it was a sufficient overt act to give a house the character of a homestead. See Timm, 2013 WL 3272488, at *4 ("[W]e find Cory's actual occupancy of the house in Boone met the test. Cory used the house as his dwelling after he purchased it . . . ."). As a general matter, "Iowa courts have consistently maintained that the homestead statute should be broadly and liberally construed in favor of exemption." In re McDonald, No. BR 15-00739, 2016 WL 1238832, at *2 (Bankr. N.D. Iowa Mar. 29, 2016) (collecting cases).

Here, the record is undisputed that Debtor bought the South Carolina house and immediately occupied it with his family for two and a half weeks. He also testified quite clearly that he intended to live there permanently after he retires.

5

Moreover, and perhaps most importantly, Debtor has lived there periodically with his wife and son, but they continue to live in the home year-round. Thus the house was not only a place for Debtor to sleep for those two and a half weeks, it was "a place to abide—a place for the family." Charless & Blow, 1 Iowa at 435–36. Debtor returned to Cedar Rapids so that he could continue work at Quaker Oats.

The Court finds, given Iowa courts' clear instruction to interpret the homestead exemption "broadly and liberally" in favor of exemption, McDonald, 2016 WL 1238832, at *2, that Debtor has presented sufficient "overt acts" to "express his intention" that the house would eventually be his permanent residence. The Court concludes that the homestead character attached to the South Carolina house when Debtor purchased with the intent that it would be his retirement home and occupied the house with his wife and son.

### B. Abandoning the Homestead

The Court must also determine on this record, however, whether the homestead character continued in the South Carolina house. "Where actual occupancy of the homestead has ceased, a presumption of abandonment arises, and the burden is upon the one claiming the homestead right to show that there was a fixed and definite purpose to return." Roberts, 450 B.R. at 169 (internal quotation marks omitted). The house will remain exempt as a homestead, however, "as long as [the owner] has an intention to return." Roberts, 450 B.R. at 169 (quoting In re

6

McClain's Estate, 220 Iowa 638, 262 N.W. 666, 669 (1935)) (internal quotation marks omitted); see also Timm, 2013 WL 3272488, at *5 ("Cory intended to return to the Boone residence as his home, and therefore, it did not lose its status as his homestead."). Thus, even if the owner leaves the homestead for a long time for work, the house remains exempt as long as the owner intends to return. Timm, 2013 WL 3272488, at *5 (collecting cases finding that owners who were absent from their homesteads for work did not abandon it). For example, one court found "no abandonment of homestead despite family's four-year absence from Iowa property while father worked for better wages at [a] railroad company in Kansas." Id. (citing Boyer v. Dague, 134 N.W. 542, 542 (Iowa 1912)). The owner's "continued and fixed purpose to return" is the controlling fact:

> Whether or not a homestead has been abandoned is largely a matter of intent . . . that must usually be determined from the testimony of the parties in the light of the surrounding circumstances. . . . Thus, where the owner has actually removed from the alleged homestead and actually occupied another residence, it becomes incumbent upon him to show that he did not intend a permanent abandonment of his homestead. The owner may meet this burden by showing that he had a continued and fixed purpose to return, and such fact may be established by his own testimony as to his own intent.

Roberts, 450 B.R. at 169 (citations and quotation marks omitted). "The loss of a homestead exemption through the theory of abandonment is not favored" under Iowa law. Timm, 2013 WL 3272488, at *5.

Debtor testified that he intended to return to the South Carolina house and to use it as his only home after his retirement. Since buying the house, he has always considered it to be his home. He has continuously intended to live there permanently after his retirement. He continues to show that commitment and intent by his wife and son's ongoing occupation of the property. Debtor himself has repeatedly demonstrated this intention by returning to the South Carolina house every summer and every chance he has. Debtor lives in a small apartment in Cedar Rapids during the majority of the year in order to continue working at Quaker Oats. Debtor showed his clear and continued intent to return and live in the South Carolina house after he retires. His testimony was undisputed.

The Court finds that Debtor has shown a sufficiently definite and fixed purpose to return to the South Carolina house after his retirement since purchasing the South Carolina house. As a result, Debtor never abandoned the homestead. The South Carolina house is exempt as Debtor's homestead.

## CONCLUSION

**WHEREFORE**, Trustee's Objection to Debtor's Claimed Exemption is OVERRULED.

Dated and Entered:
September 8, 2016

_____
Thad J. Collins
Chief Bankruptcy Judge